**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Earnesto Tillman, | No. CV-19-08231-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Baxter E. Everett, *et al.*, | |
| Defendants. | |

At issue is Defendants Universal Logistics Holdings ("ULH"), Universal Intermodal Services ("UIS"), and Westport Axle Co.'s ("Westport") Motion for Summary Judgment Regarding Successor Liability (Doc. 33, "Mot.") and Plaintiff's Amended Rule 56(d) Motion and Affidavit (Doc. 58, "Aff."), to which Defendants filed a Response in opposition (Doc. 61, "Resp.").

This action stems from a motor accident between Plaintiff and Defendant Baxter Everett, who was employed by Defendant Specialized Rail Services, Inc. ("SRS") at the time of the accident in July 2017. SRS later executed a Stock Purchase Agreement ("SPA") in October 2018 in which Westport[1] purchased all SRS shares with cash. Westport and UIS are subsidiaries of ULH. Under a theory of successor liability, Plaintiff alleges that ULH, UIS, and or Westport are liable to Plaintiff by virtue of the SRS stock purchase. On February 4, 2020, ULH, UIS, and Westport filed a Motion for Summary Judgment on the

---

[1] The Court acknowledges, as Plaintiff points out, that the press release contained in ULH's SEC Form 8-K filing, exhibit 99.1, states that (1) ULH acquired SRS, and (2) SRS would operate as part of UIS. However, the SPA lists Westport as the buyer. Thus, for purposes of this Motion, the Court refers to Westport as the purchasing corporation.

grounds that Plaintiff cannot and will not be able to establish successor liability for any liability of SRS's resulting from the accident between Plaintiff and Defendant Baxter.

Plaintiff has filed a motion and affidavit under Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), asking the Court to defer ruling on Defendants' Motion to allow time to take discovery on the issue of successor liability. Under Rule 56(d), a party may request a continuance on the court's ruling on the opposing party's motion for summary judgment if the party shows (1) the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The decision to grant or deny a Rule 56(d) motion is within the court's discretion. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). "Where, however, a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d)] motion fairly freely." *Id.*

Plaintiff submits several bases for delaying ruling on Defendants' Motion. As a procedural matter, Plaintiff notes that discovery had not even begun in this case before Defendants filed their Motion for Summary Judgment. Further, it *could not* have begun with respect to Westport, because Westport did not serve its first MIDP response until February 2—after the Motion was filed. Though not dispositive, this fact weighs in favor of granting Plaintiff's Rule 56(d) motion and affidavit.

Turning to the substance, the general rule is that when a corporation sells or transfers its principal assets to a successor corporation, the latter will not be liable for the debts and liabilities of the former. *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 836 P.2d 1034, 1039 (Ariz. Ct. App. 1992). However, four exceptions to this rule exist, such that successor liability may be found if: (1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation or reincarnation of the seller; or (4) the

transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. *Id*. Plaintiff presents no argument or material with respect to the first exception. However, he contends that due to the early timing of Defendants' Motion, he is currently unable to present facts that would defeat summary judgment regarding the second, third, and fourth exceptions.[2]

Defendants point out that no Arizona case directly addresses the *de facto* merger exception to the general rule of non-liability for a successor corporation. However, courts nationwide are in accord as to the factors for finding a *de facto* merger: (1) continuity of management, personnel, physical location, assets, and general business operations between the buyer and seller corporations; (2) continuity of shareholders; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. *E.g., Louisiana-Pac. Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1264 (9th Cir. 1990), *overruled on other grounds in Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 361 (9th Cir. 1997); *see also Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46 (2d Cir. 2003); *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir. 1985).

While some courts hold that not all factors must be met, they "consistently require[] continuity of shareholders, accomplished by paying for the acquired corporation with shares of stock." *Louisiana-Pac. Corp.*, 909 F.2d at 1264; *see also Arnold Graphics Indus. v. Independent Agent Center, Inc*., 775 F.2d 38, 42 (2d Cir. 1985) ("To find that a *de facto* merger has occurred there must be . . . a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock."); *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) ("Where the assets are sold for cash [rather than stock], no basic fundamental change occurs in the relationship of the stockholders to their

---

[2] The Court acknowledges that much of Defendants' Response focuses on the interpretation of the SPA and the Defendants' intent not to transfer to Westport SRS's potential liability for Plaintiff's claim. However, the second, third, and fourth exceptions are equitable doctrines that look beyond the plain language of the contract.

- 3 -

respective corporations, . . . and absent continuity of shareholder interest, the two corporations are strangers, both before and after the sale.")[3]

Here, the SPA was accomplished through a purchase of SRS's shares with cash, not the purchasing corporation's shares. (Doc. 34-3 at 7.) Prior to the sale, SRS was owned by a combination of individuals and trusts. (*See* Doc. 34-3 at 7.) Westport is a wholly owned subsidiary of a publicly traded company. Thus, discovery will not yield information that creates a genuine dispute of material fact as to the continuity of shareholders, as Westport paid for the SRS shares with cash. Accordingly, the Court denies Plaintiff's Rule 56(d) motion and affidavit on these grounds.

As to the mere continuation exception, a corporation is a mere continuation of a predecessor corporation if there is "substantial similarity in the ownership and control of the two corporations," and "insufficient consideration running from the new company to the old for the assets passing to the new company." *Warne Investments, Ltd. v. Higgins*, 195 P.3d 645, 651 (Ariz. Ct. App. 2008). Here, Plaintiff avers that Westport and SRS have common ownership, executives, employees, or directors, and that Westport pays salaries and other expenses of SRS. (Aff. ¶¶ 23, 30.) This sufficiently demonstrates commonality in the operation and control of the corporations such that Plaintiff should have the opportunity to discover more information related to the same. Plaintiff also submits that Westport purchased the shares of SRS for an amount equaling approximately half of SRS's revenue the previous year, which may demonstrate insufficient consideration for the purchase of SRS shares. (Aff. ¶¶ 27c.) In light of the early stages of this litigation, Plaintiff is entitled to limited discovery to develop the mere continuation theory.

---

[3] The Court located a few cases in which the absence of a stock transfer was not conclusive. In *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 883 (Mich. 1976), the court held that continuity of the seller corporation's policy, operations, personnel, and properties may sufficiently satisfy the continuity element. However, that case dealt with a fifth exception to the rule of non-liability for successor corporations—the product line exception—which the Arizona Court of Appeals expressly declined to adopt, finding the task of expanding the exceptions was appropriate for the legislature. *See Winsor v. Glasswerks PHX, L.L.C.*, 63 P.3d 1040, 1047 (Ariz. Ct. App. 2003) (discussing *Turner* and declining to follow it). In *Atlas Tool Co., Inc. v. Comm'r*, 614 F.2d 860, 863 (3d Cir. 1980), one man owned all the stock in both the selling and purchasing corporations such that shareholder continuity was met automatically.

As to the fourth exception, Plaintiff states that Arizona imposes successor liability if the asset transfers were fraudulent under state law and cites to the Uniform Fraudulent Transfer Act, A.R.S. § 44-1001 *et seq. See also Moore v. Browning*, 50 P.3d 852, 858 (Ariz. Ct. App. 2002) (holding the "UFTA has displaced any common law cause of action for fraudulent conveyance"). Constructive fraudulent transfer occurs when the transferor does not receive "reasonably equivalent value" in exchange for the transaction and the transferor is insolvent at the time of the transaction or becomes insolvent shortly after.[4] A.R.S. § 44-1005. Plaintiff again avers that SRS transferred all its stock for approximately half its total revenue earned in the year preceding the transfer. While Defendants contend SRS is a "going concern," (Resp. at 7), Plaintiff's counsel submits that SRS's counsel told him SRS was likely going to be dissolved or terminated. (Aff. ¶ 20.) Because it is possible that facts exist on the issues of inadequate consideration and insolvency that would preclude summary judgment, Plaintiff is entitled to limited discovery of the same.

Finally, Plaintiff asserts a theory of alter ego liability in his Rule 56(d) motion and affidavit. The Court fails to see how this is relevant to resolution of Defendant's pending Motion regarding successor liability, and therefore declines to address it. The Court has established a general discovery timeline (Doc. 60) which governs discovery of all other claims, defenses and issues not the subject of Defendant's pending Motion for Summary Judgment.

Again, in generous consideration of the early timing of Defendants' Motion, Plaintiff has demonstrated he is entitled to a deferred ruling on the Motion in order to conduct discovery on the issues of mere continuation and constructive fraudulent transfer. Accordingly, the Court grants Plaintiff's Rule 56(d) request for additional discovery "as a matter of course." *See Burlington N. Santa Fe R. Co.*, 323 F.3d at 773–74.

However, the Court declines to grant the scope of discovery that Plaintiff requests. Plaintiff seeks to depose approximately 11 people on the issue of successor liability alone.

---

[4] A constructive fraudulent transfer claim is not subject to the heightened pleading standards of Rule 9(b). *See, e.g., Airbus DS Optronics GmbH v. Nivisys LLC*, No. CV-14-02399-PHX-JAT, 2015 WL 3439143, at *10 (D. Ariz. May 28, 2015).

- 5 -

1  Discovery on a claim or defense is limited to what is nonprivileged, relevant, and
2  *proportional* to the needs of the case. Fed. R. Civ. P. 26(b). The Court therefore limits
3  Plaintiff to three depositions on the issue of successor liability. While the Court will not
4  impose a numerical limitation on the pages or documents that Plaintiff may request, it
5  reiterates again that he is entitled only to that which fits the needs of the case.

6  **IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiff's
7  Amended Rule 56(d) Motion and Affidavit (Doc. 58) to the extent consistent with this
8  Order.

9  **IT IS FURTHER ORDERED** that Plaintiff will have until July 24, 2020, to
10 conduct its limited discovery as set forth above in support of its successor liability
11 exception arguments. Plaintiff's Amended Response to Defendant's Motion for Summary
12 Judgment shall be due no later than August 21, 2020. Defendant's reply will be due
13 thereafter according to the Local Rules.

14 Dated this 17th day of April, 2020.

16 Honorable John J. Tuchi
   United States District Judge